# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re: 19-40535-CJP | ) **Chapter 7 Proceeding** |
| | ) |
| **Catherine Ann Martell aka Catherine Ann Bent aka Catherine Ann Hoose** | ) |
| Debtor | ) |
| | ) |
| **Freedom Mortgage Corporation.** | ) |
| Movant | ) |
| | ) |
| vs. | ) |
| | ) |
| **Catherine Ann Martell aka Catherine Ann Bent aka Catherine Ann Hoose and David M. Nickless, Trustee** | ) |
| Respondent | ) **May 16, 2019** |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Freedom Mortgage Corporation (the "Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic stay with respect to certain real property of Catherine Ann Martell aka Catherine Ann Bent aka Catherine Ann Hoose (the "Debtor") and Sheree Ann House having an address of 201 Nesmith Street, Lowell, MA 01852 (the "Property"). In support of this Motion, Movant respectfully states:

1.   A petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtor on March 31, 2019.

2.   The Debtor has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $379,008.00 (the "Note"). Said note is endorsed by New England Regional Mortgage Corporation to

Pacific Union Financial, LLC, and is endorsed in blank by Pacific Union Financial, LLC. A copy of the Note is attached hereto as Exhibit A. Movant is an entity entitled to enforce the Note and Mortgage (defined below).

3.   Pursuant to that certain Mortgage (the "Mortgage") all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Mortgage are secured by the Property. A copy of the Mortgage is attached hereto as Exhibit B.

4.   The Mortgage has been assigned to the Movant pursuant to an assignment of mortgage, from Mortgage Electronic Registration Systems, Inc. as nominee for New England Regional Mortgage Corporation to Freedom Mortgage Corporation, a copy of which is attached hereto as Exhibit C.

5.   As of May 1, 2019, the approximate outstanding amount of the obligations due under said note and mortgage less any partial balance is $387,963.62.

6.   As of May 1, 2019, the Debtor has failed to make payments in an aggregate amount sufficient to satisfy in full the payment contractually due under the Note on December 1, 2018 or any full payment contractually due under the Note thereafter.

7.   The estimated market value of the Property is $ 389,900.00. The basis for such valuation is Debtor's Schedule A. For purposes of this motion, it is the Movant's opinion that the liquidation value of the premises is $364,228.06, calculated as the fair market value less a reasonable Realtor's fee of 6%, $23,394.00, deed stamps of $1,777.94, and anticipated costs incurred for a real estate closing of $500.00.

8.   The Debtor's Schedule D reveals there are no additional liens on the subject property.

9.   As of May 1, 2019 the estimated total amount of encumbrances on the Property

is $387,963.62.

10. There is no other collateral securing Debtor's obligation to the Movant.

11. Upon information and belief a Declaration of Homestead has not been recorded.

12. Pursuant to 11 U.S.C. § 362(d)(1), cause exists for relief from the automatic stay for the following reasons:

      a. Movant's interest in the Property is not adequately protected.

13. Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor has no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

14. The Movant also requests that this Court order that Bankruptcy Rule 4001(a)(3) is not applicable so that Movant may immediately enforce and implement the requested order modifying the automatic stay.

15. The Movant also requests an order allowing Movant to assess the Debtor's account with reasonable attorney's fees and costs in connection with the preparation, filing, and prosecution of this Motion for Relief from Stay. The note and mortgage previously referred to in this Motion contain provisions allowing the Movant to collect reasonable attorney's fees and costs in connection with enforcing the note and mortgage. In the event the Debtor receives a discharge, such fees and costs shall be non-recourse against the Debtor unless included in a reaffirmation agreement.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1. Relief from the stay allowing Movant and any successors or assigns to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.      That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived. As the Debtor is surrendering the Property, that the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3.   An order allowing Movant to assess the Debtor's account with reasonable attorney's fees and costs in connection with the preparation, filing, and prosecution of this Motion for Relief from Stay.

4.   For such other relief as the Court deems proper.

Freedom Mortgage Corporation
By /s/Andrew S. Cannella
    Andrew S. Cannella
    B.B.O. #680572
    The Movant's Attorney
    Bendett & McHugh, P.C.
    270 Farmington Avenue, Suite 171
    Farmington, CT 06032
    Phone (860) 677-2868
    Fax (860) 409-0626
    Email: BKECF@bmpc-law.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **In Re: 19-40535-CJP** ) | **Chapter 7 Proceeding** |
| ) | |
| **Catherine Ann Martell aka Catherine** ) | |
| **Ann Bent aka Catherine Ann Hoose** ) | |
| **Debtor** ) | |
| ) | |
| ) | |
| **Freedom Mortgage Corporation** ) | |
| ) | |
| **Movant** ) | |
| ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **Catherine Ann Martell aka Catherine** ) | |
| **Ann Bent aka Catherine Ann Hoose** ) | |
| **and David M. Nickless, Trustee** ) | |
| **Respondent** ) | |

### ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY

After notice and a hearing on Freedom Mortgage Corporation (hereafter, the "Movant") Motion for Relief from the Automatic Stay, (hereafter, the "Motion") Doc. I.D. No. _____:

**IT IS HEREBY ORDERED** that the Motion is Granted—the automatic stay of 11 U.S.C. § 362(a) is modified to permit the Movant, its designated servicing agent, and/or its successors and assigns to commence, continue, and prosecute to judgment a foreclosure action and otherwise exercise its rights, if any, with respect to real property known as **201 Nesmith Street, Lowell, Massachusetts** 01852 in accordance with applicable state law, and

**IT IS FURTHER ORDERED** that the Movant, its designated servicing agent, and/or its successors and assigns may, at its option, offer, provide, and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement, including accepting a deed in lieu of foreclosure from the Debtor. The Movant or its designated servicing agent may contact the Debtor via telephone or written correspondence to offer such an agreement. In the event the Debtor receives a discharge, any such agreement shall be non-recourse against the Debtor unless Movant's debt was included in a reaffirmation agreement.

**IT IS FURTHER ORDERED** that the Movant may assess the Debtor's mortgage account with reasonable attorney's fees and costs in connection with this Motion. In the event the Debtor receives a discharge, such fees and costs shall be non-recourse against the Debtor unless included in a reaffirmation agreement.

**IT IS FURTHER ORDERED** that the 14-day stay of Fed.R.Bankr.P. 4001(a)(3) is not applicable and the Movant may immediately enforce and implement this order.

Dated: _____          BY THE COURT

_____
Honorable Christopher J. Panos
U.S. Bankruptcy Judge

EXHIBIT A

# NOTE

| JUNE 16, 2017 | METHUEN, | MASSACHUSETTS |
|---|---|---|
| [Date] | [City] | [State] |

201 NESMITH STREET, LOWELL, MA 01852
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $379,008.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is NEW ENGLAND REGIONAL MORTGAGE CORPORATION. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.500%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on AUGUST 1, 2017. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on JULY 1, 2047, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 90 STILES ROAD, SUITE 201, SALEM, NH 03079 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,920.38.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3.000% of my overdue payment of principal and

interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

*CM SH*

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ 6/16/17
- BORROWER - SHEREE ANN HOOSE - DATE -

_____ 6/16/17
- BORROWER - CATHERINE ANN MARTELL - DATE -

*[Sign Original Only]*

Pay to the order of:
Without Recourse
PACIFIC UNION FINANCIAL, LLC

_____
Andy Peach, Executive Vice President

Lender:        New England Regional Mortgage Corporation

Borrower:      SHEREE ANN HOOSE and CATHERINE ANN MARTELL

Property:      201 Nesmith Street, Lowell, MA  01852

Note Amount:   $379,008.00

# ENDORSEMENT ALLONGE TO NOTE

This Allonge to Note is to the certain Note dated June 16, 2017, executed by SHEREE ANN HOOSE and CATHERINE ANN MARTELL in the amount of $379,008.00 in favor of New England Regional Mortgage Corporation as Payee. This Allonge is affixed and becomes a permanent part of said Note.

**PAY TO THE ORDER OF**

**Pacific Union Financial, LLC**

**Without Recourse**

**New England Regional Mortgage Corporation**

Signature:

**Suzanne Hubbard, Operations Manager, Southwest Bank, Attorney In Fact For New England Regional Mortgage Corporation**

EXHIBIT B

Bk: 31209 Pg: 133   Page: 1 of 14
Recorded:  06/16/2017 02:37 PM

After Recording Return To:
NEW ENGLAND REGIONAL MORTGAGE
CORPORATION
90 STILES ROAD, SUITE 201
SALEM, NH 03079
(603) 894-1230
ATTN: POST CLOSING

Property Address: 201 NESMITH STREET, LOWELL, MA 01852

[Space Above This Line For Recording Data]

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated **JUNE 16, 2017**, together with all Riders to this document.

**(B) "Borrower"** is **SHEREE ANN HOOSE, CATHERINE ANN MARTELL JOINT TENANCY.** Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is NEW ENGLAND REGIONAL MORTGAGE CORPORATION. Lender is a CORPORATION organized and existing under the laws of **NEW HAMPSHIRE.** Lender's address is **90 STILES ROAD, SUITE 201, SALEM, NH 03079.**

**(D-1) "Mortgage Broker"** is __NO MORTGAGE BROKER.__ Mortgage Broker's post office address is __NO MORTGAGE BROKER__ and Mortgage Broker's license number is __NO MORTGAGE BROKER.__

**(D-2) "Mortgage Loan Originator"** is NEW ENGLAND REGIONAL MORTGAGE CORPORATION.

Page 1 of 13

Mortgage Loan Originator's post office address 90 STILES ROAD SUITE 201 SALEM NH 03079 and Mortgage Loan Originator's license number is 21118.

(E) "Note" means the promissory note signed by Borrower and dated JUNE 16, 2017. The Note states that Borrower owes Lender THREE HUNDRED SEVENTY-NINE THOUSAND EIGHT AND 00/100 Dollars (U.S. $379,008.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JULY 1, 2047;

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider         ☐ Condominium Rider         ☐ Planned Unit Development Rider
☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Secretary" means the Secretary of the United States Department of Housing and Urban Development or his designee.

Massachusetts FHA Mortgage - 10/16
19379.18                        Page 2 of 13

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the COUNTY of MIDDLESEX:

which currently has the address of 201 NESMITH STREET, LOWELL, Massachusetts 01852 ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial

payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

Massachusetts FHA Mortgage - 10/16
19379.18                              Page 4 of 13

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance

coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.

Massachusetts FHA Mortgage - 10/16
19379.18                              Page  6  of 13

Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge

Massachusetts FHA Mortgage - 10/16
19379.18                                    Page 7 of 13

unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be

applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of

address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the

future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous

Massachusetts FHA Mortgage - 10/16
19379.18                              Page 11 of 13

Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Subordination of Homestead and Waivers.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees, to the greatest extent permitted by Applicable Law, that such homestead estate is subordinated in all respects to this Security Instrument and the amount due under the Note and to all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Borrower waives and relinquishes all rights of curtesy and dower

in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ 6/16/17

- BORROWER - SHEREE ANN HOOSE - DATE -

_____ 6/16/17

- BORROWER - CATHERINE ANN MARTELL - DATE -

(Space Below This Line for Acknowledgment)

STATE OF _MASSACHUSETTS_

COUNTY OF _MIDDLESEX_

On this _16_ day of _JUNE, 2019_____, before me personally appeared SHEREE A HOOSE  Drivers License  S29068978 CATHERINE A MARTELL Drivers License  S764 28018 to me known to be the person (or persons) described in and who executed the foregoing instrument, and acknowledged that he (or she) (or they) executed the same as his (or her) (or their) free act and deed.

(Seal)

_____
Notary Public

**BACHIR M. ATALLAH**
Notary Public
Commonwealth of Massachusetts
My Comm. Expires June 8, 2023

My   Commission   Expires:

_____
June 8, 2023

EXHIBIT A

File No.: 201NesmithL

The Land referred to herein below is situated in the County of Middlesex, State of Massachusetts , and is described as follows:

The land with the buildings thereon, now known as and numbered 201 Nesmith Street, Lowell, Middlesex County, Massachusetts, and being more particularly described as follows:

Easterly by Nesmith Street forty-four and ninety-three hundredths (44.93) feet;
Southerly by land now or formerly of Clapp buy two lines measuring thirty-four and ninety-five hundredths (34.95) feet and eighty-nine and eight hundredths (89.08) feet, respectively;
Westerly by land now or formerly of Reilly forty-0ne and fifty-two hundredths (41.52) feet;
Northerly by land now or formerly of Stevens one hundred nineteen and nine tenths (119.09) feet;

Containing 5,445 square feet, more or less, and be said contents and any and all measurements more or less.

Property Address:

201 Nesmith Street, Lowell, MA 01852

EXHIBIT C-2

State of Texas
County of Tarrant

## SPECIAL POWER OF ATTORNEY
### Warehouse Account

**WHEREAS,** New England Regional Mortgage Corporation (the "**Company**" or "**Borrower**"), a Corporation organized in the state of New Hampshire with its principal offices in 90 Stiles Road, Suite 201, Salem, New Hampshire 03079 has entered into that certain Mortgage Warehouse Agreement dated April 21, 2016, including any amendments thereto that may be made from time-to-time (the "Agreement"), by and between the **Company** and **Southwest Bank** ("**Southwest**" or "**Lender**").

**WHEREAS,** in carrying out its duties and obligations under the Agreement, many of which are time sensitive, **Southwest** and **Company** have determined that the interests of the **Company** would be advanced if **Southwest** acted as a limited power of attorney to open, close, and conduct debit and credit transactions on a deposit account for **Company** under **Company**'s name titled Participation Account ("Participation Account");

**NOW, THEREFORE, I, Nancy Nobile,** the duly authorized President of the **Company** do hereby make, constitute and appoint Southwest Bank, a Texas Banking Association, whose principal office is located in Fort Worth, County of Tarrant, State of Texas, through its officers and employees as authorized by Southwest's Mortgage Warehouse President as the **Company**'s true and lawful attorney-in-fact for it and in its name, place and stead and, on its behalf and for its use and benefit to conduct all banking transactions related to the Participation Account. Simultaneously with the execution of this special power of attorney ("Power of Attorney"), **Company** hereby relinquishes all authority, control or right to control the aforementioned Participation Account at **Southwest** under **Company**'s name for so long as this Power of Attorney remains in force.

**THIS POWER OF ATTORNEY** shall commence and be in full force and effect as of the date hereof and shall remain and be in full force and effect until an appropriate written notice of revocation thereof executed by an authorized officer of the **Company** is actually received by **Southwest** at its offices in Fort Worth, Tarrant County, Texas.

**THE COMPANY HEREBY** covenants and agrees that it will protect, defend, indemnify and save each such attorney-in-fact, both **Southwest** and its employees and officers, harmless from and against any and all claims, demands and causes of action, suits or other litigation (including all costs, expenses and attorneys fee incurred by **Southwest** and/or any of its employees and officers in defense of any such claims, demands or causes of action) in anywise associated with or related to the acts performed by any or all of said attorneys-in-fact or any of them in the proper exercise of the powers or authorizations conveyed hereby consistent with, and in furtherance of, the requirements of the Agreement or any subsequent agreement.

SLC-7317727-3

EXECUTED as of _4-22-16_

THE COMPANY:   New England Regional Mortgage Corporation

By: _Nancy Nobile_

Name: Nancy Nobile

Its:   President

State of _Ma_

County of _Middlesex_

**BEFORE ME,** the undersigned authority, on this day personally appeared Nancy Nobile, President of New England Regional Mortgage Corporation a Corporation ("**Company**"), known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that this person executed the same for the purposes and consideration therein expresses, in the capacity stated, and as the act and deed of said **Company**.

Given under my hand and seal of office this _22_ day of _April_, 20 _16_

_____
Notary Public in and for
The State of _Ma_

My Commission Expires:

_7-15-22_





Southwest Bank
Mortgage Warehouse POA Authority
for Participation Accounts

| Last Name | First Name | Title | Signature |
|-----------|-----------|-------|-----------|
| Frase | David | President Mortgage Warehouse Lending | |
| Gillespie | Jason | Senior Vice President, Project Manager Warehouse Lending | |
| Hubbard | Suzanne | Assistant Vice President, Operations Manager Warehouse Lending | |
| Brown | Alba | Credit Processor, Mortgage Warehouse Lending | |
| Farris | Roy | Lead Funder, Mortgage Warehouse Lending | |
| West | Rachel | Assistant Vice President, Warehouse Lending Credit Manager | |

Authorized By: _____  Date: _____
David Frase, Mortgage Warehouse President

Maintained By: _____  Date: 5-17-2017
Lisanne Davidson, Secretary of Southwest Bank

cc: Verification     Date: 05-30-17
cc: Wires            Date: 05-30-17

EXHIBIT C

## Middlesex North Registry of Deeds

# Electronically Recorded Document

### This is the first page of this document - Do not remove

---

### Recording Information

| | |
|---|---|
| Document Number | : 12744 |
| Document Type | : DIS |
| Recorded Date | : April 09, 2019 |
| Recorded Time | : 10:24:03 AM |
| | |
| Recorded Book and Page | : 32883 / 22 |
| Number of Pages(including cover sheet) | : 3 |
| Receipt Number | : 839569 |
| Recording Fee | : $75.00 |

**Middlesex North Registry of Deeds**
**Richard P. Howe Jr., Register**
**360 Gorham Street**
**Lowell, Massachusetts 01852**
**978/322-9000**
**www.lowelldeeds.com**

RECORDING REQUESTED BY:
**Freedom Mortgage Corporation**
**RoseAnn McKenry**
**500 Virginia Dr**
**Ste 502**
**Ft Washington PA 10934**
**(855) 690-5900**
AND WHEN RECORDED MAIL TO:
**Freedom Mortgage Corporation**
**AOM Dept**
**500 Virginia Dr, Ste 502**
**Ft Washington, PA 19034**

---

### ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **Mortgage Electronic Registration Systems, Inc., solely as nominee for NEW ENGLAND REGIONAL MORTGAGE CORPORATION., its successors and assigns, P.O. Box 2026, Flint, MI 48501-2026 (855) 690-5900,** by these presents does convey, assign, transfer and set over to: **Freedom Mortgage Corporation, 907 Pleasant Valley Ave Ste 3, Mount Laurel, NJ 08054,** the described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$379008.00** is recorded in the State of **MASSACHUSETTS**, County of **Middlesex North** Official Records, dated **06/16/2017** and recorded on **06/16/2017,** as Instrument No. **201700025271** in Book No. **31209,** at Page No. **133**

Original Mortgagor: **SHEREE ANN HOOSE, CATHERINE ANN MARTELL JOINT TENANCY.**
Original Mortgagee: **Mortgage Electronic Registration Systems, Inc., solely as nominee for NEW ENGLAND REGIONAL MORTGAGE CORPORATION., its successors and assigns**
Property Address: **201 NESMITH STREET LOWELL, MA 01852**

Date: **04/09/2019**

**Mortgage Electronic Registration Systems, Inc.,**
**solely as nominee for NEW ENGLAND REGIONAL**
**MORTGAGE CORPORATION., its successors and**
**assigns**
By:

Name: **Eric Sturgis**
Title: **Assistant Secretary**

STATE OF **PA**
COUNTY OF **MONTGOMERY** } s.s.

On **04/09/2019**, before me, **George A. Bitler,** Notary Public, personally appeared **Eric Sturgis, Assistant Secretary** of **Mortgage Electronic Registration Systems, Inc., solely as nominee for NEW ENGLAND REGIONAL MORTGAGE CORPORATION., its successors and assigns,** personally known to me (or proved to me the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she/he/they executed the same in her/his/their authorized capacity(ies), and that by her/his/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

*George A. Bitler*

Commonwealth of Pennsylvania - Notary Seal
George A. Bitler, Notary Public
Montgomery County
My commission expires November 2, 2022
Commission number 1342011
Member, Pennsylvania Association of Notaries

Notary Public: **George A. Bitler**
My Commission Expires: **11/02/2022**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **In Re: 19-40535-CJP** | )    **Chapter 7 Proceeding** |
| | ) |
| **Catherine Ann Martell aka Catherine** | ) |
| **Ann Bent aka Catherine Ann Hoose** | ) |
| **Debtor** | ) |
| | ) |
| **Freedom Mortgage Corporation** | ) |
| **Movant** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **Catherine Ann Martell aka Catherine** | ) |
| **Ann Bent aka Catherine Ann Hoose** | ) |
| **and David M. Nickless, Trustee** | ) |
| **Respondent** | )    **May 16, 2019** |

### PROOF OF SERVICE

     The undersigned (the "Movant") hereby certifies that, on or before the 16th day of May, 2019, a copy of the Motion for Relief From Stay and a copy of the proposed order were served to the following:

Catherine Ann Martell aka Catherine Ann
Bent aka Catherine Ann Hoose
Debtor
201 Nesmith Street
Lowell, MA 01852
*Via First Class Mail*

David M. Nickless
Trustee
*Via Electronic Notice of Filing*

Tax Collector
375 Merrimack Street, 1st Floor, Room 30
Lowell, MA  01852
*Via First Class Mail*

Lamya A. Forghany
Debtor's Attorney
*Via Electronic Notice of Filing*

U.S. Trustee
*Via Electronic Notice of Filing*

Sheree Ann House
201 Nesmith Street
Lowell, MA  01852
*Via First Class Mail*

I further certify that I am, and was at all times during the service of a copy of this Motion For Relief From Automatic Stay, not less than 18 years of age and not a party to the  matter concerning which service was made.


**I declare that the foregoing is true and correct under penalty of perjury.**


By */s/Andrew S. Cannella*
   Andrew S. Cannella
   B.B.O. #680572
   The Movant's Attorney
   Bendett & McHugh, P.C.
   270 Farmington Avenue, Suite 171
   Farmington, CT 06032
   Phone (860) 677-2868
   Fax (860) 409-0626
   Email: BKECF@bmpc-law.com